# ARMED SERVICES BOARD OF CONTRACT APPEALS

| | |
|---|---|
| Appeal of -- ) | |
| ) | |
| Korea Engineering Consultants Corporation ) | ASBCA No. 61724 |
| ) | |
| Under Contract No. W91QVN-17-P-0099 ) | |

APPEARANCE FOR THE APPELLANT:    Mr. Byung Chan Park
                                 Vice President

APPEARANCES FOR THE GOVERNMENT:  Scott N. Flesch, Esq.
                                 Army Chief Trial Attorney
                                 MAJ Wayne T. Branom III, JA
                                 Trial Attorney

## OPINION BY ADMINISTRATIVE JUDGE STINSON

Appellant, Korea Engineering Consultants Corporation (KECC), appeals a contracting officer's final decision dated June 22, 2018, denying-in-part appellant's May 11, 2018, certified claim for breach of contract in the amount of KRW 301,598,400 (R4, tabs 39-40). We have jurisdiction pursuant to the Contract Disputes Act of 1978, 41 U.S.C. §§ 7101-7109. The parties agreed to submit this appeal for a decision on the record without a hearing pursuant to Board Rule 11. The government submitted an initial brief and appellant declined the opportunity to submit any brief. For the reasons stated below, we deny KECC's appeal.

## FINDINGS OF FACT

1. On August 24, 2017, the 411th Contracting Support Brigade, Korea, entered into Contract No. W91QVN-17-P-0099 with KECC in the amount of KRW 95,880,000.00 for gravel delivery and equipment lease (R4, tab 1 at 1-2). The contract required: delivery of 170 cubic meters of 38mm-50mm diameter gravel (CLIN 0001); delivery of 85 cubic meters of 100mm-152mm diameter gravel (CLIN 0002); lease of a Caterpillar CS-563D roller, or equal, loaded on a transport vehicle (CLIN 0003); and lease of 2 Doosan DX500E hand drum rollers, or equal, loaded in dump trucks (CLIN 0004) (R4, tab 1 at 3-5, 11).

**Contractual Provisions**

2. The contract specified a 30-day lease period for the Caterpillar roller and the two hand drum rollers (R4, tab 1 at 4-5).

3. Section 1 of the contract's Statement of Work provided:

> **Scope of Work**: This SOW describes the requirements for the delivery of gravel and construction equipment in support of 35th Air Defense Artillery and 8th Army Engineers construction efforts in the vicinity of USAG-Daegu. The Contractor shall deliver gravel conforming to the characteristics of the CLIN 0001 and 0002 narratives as directed by the Contracting Officers [sic] Representative (COR). The Contractor shall deliver construction equipment conforming to the characteristics of the CLIN 0003 and 0004 narratives as directed by the COR in accordance with this SOW and delivery schedule.

(R4, tab 1 at 11)

4. Section 2 of the contract's Statement of Work provided, in pertinent part:

> 2.1 Delivery: The contractor shall deliver items in CLINs 0001-0004 (170 cubic meters of 38mm-50mm diameter gravel, 85 cubic meters of 100mm-152mm diameter gravel, one (1) Caterpillar CS-563D or Equal roller loaded on a transport vehicle, and two (2) Doosan DX 500E or equal in dump trucks) to Camp Carroll on 25 August 2017 between 1300 and 1600, Korea Standard Time (KST).
>
> 2.1.1 The Contractor is responsible for possessing Korean Identification, Vehicle Registration, Vehicle Insurance Certificate, and Driver Licenses for all vehicles and drivers.
>
> 2.1.2 The Contracting Officer's Representative (COR) or USAG-Daegu representative will escort the vehicle [sic] to a designated staging area. The vehicles will be parked in the staging area until directed for movement by the COR.
>
> 2.2 Drivers shall remain overnight at Camp Carroll and will be transported by the U.S. Government to a facility for overnight shelter and accommodations.

(*Id.*)

2

5. Section 2.3 of the Statement of Work provided:

> 2.3 Delivery to Construction Site: On 26 August 2017, all drivers shall be prepared to be transported to the vehicle staging point and prepared for movement no later than 0600. The Contractor shall be prepared to drive as part of a military convoy to the construction site, offload material, and re-stage for departure. No vehicle will be released from the construction site prior to the direction of the COR. The Contractor shall be prepared to maintain operations and readiness until operations have been completed (approximately 1700hrs). Once escorted from the site, contracted drivers may proceed at their discretion directly to contractor facilities.

> 2.3.1 Vehicles transporting rollers required under CLIN 0003 and 0004 shall be capable of offloading equipment by a driver-on/drive-off method.

(*Id.*)

6. The contract included FAR 52.208-4 VEHICLE LEASE PAYMENTS (APR 1984), which provided:

> (a) Upon the submission of proper invoices or vouchers, the Government shall pay rent for each vehicle at the rate(s) specified in this contract.

> (b) Rent shall accrue from the beginning of this contract, or from the date each vehicle is delivered to the Government, whichever is later, and shall continue until the expiration of the contract term or the termination of this contract. However, rent shall accrue only for the period that each vehicle is in the possession of the Government.

> (c) Rent shall not accrue for any vehicle that the Contracting Officer determines does not comply with the Condition of Leased Vehicles clause of this contract or otherwise does not comply with the requirements of this contract, until the vehicle is replaced or the defects are corrected.

(d) Rent shall not accrue for any vehicle during any period when the vehicle is unavailable or unusable as a result of the Contractor's failure to render services for the operation and maintenance of the vehicle as prescribed by this contract.

(e) Rent stated in monthly terms shall be prorated on the basis of 1/30th of the monthly rate for each day the vehicle is in the Government's possession. If this contract contains a mileage provision, the Government shall pay rent as provided in the Schedule.

(R4, tab 1 at 15)

7. Upon completion of its use by the government, the contractor was obligated to pick up the leased equipment:

> VEHICLES TRANSPORTING/DELIVERING ROLLERS REQUIRED UNDER CLIN 0003 AND CLIN 0004 SHALL BE CAPABLE OF OFFLOADING EQUIPMENT BY A DRIVE-ON/DRIVE-OFF METHOD. A JOINT INSPECTION WILL BE CONDUCTED ANNOTATING ANY DEFICIENCIES AND OVERALL SERVICEABILITY PRIOR TO ACCEPTANCE BY THE GOVERNMENT. *UPON COMPLETION OF USE, THE CONTRACTOR WILL BE CONTACTED AND COORDINATION WILL BE MADE WITH THE COR FOR EQUIPMENT PICKUP.* PRIOR TO PICKUP, A JOINT-INSPECTION WILL BE CONDUCTED ANNOTATING ANY DEFICIENCIES AND OVERALL SERVICEABILITY PRIOR TO TRANSFER TO THE CONTRACTOR.

(R4, tab 1 at 4-5) (Emphasis added)

8. The contract included FAR 52.212-4 CONTRACT TERMS AND CONDITIONS – COMMERCIAL ITEMS (JAN 2017). Section (c), entitled, "Changes," dictates that "[c]hanges in the terms and conditions of this contract may be made only by written agreement of the parties." (R4, tab 1 at 16)

9. The contract incorporated by reference DFARS 252.201-7000 CONTRACTING OFFICER'S REPRESENTATIVE (DEC 1991) (R4, tab 1 at 14). DFARS 252.201-7000(b) states, in pertinent part, "[t]he COR is not authorized to

4

make any commitments or changes that will affect price, quality, quantity, delivery, or any other term or condition of the contract." 48 C.F.R. § 252.201-7000(b).

10. The post award conference notes dated August 24, 2017, state:

> 1. GENERAL: The function and authority of the Government personnel:
>
> a. The Contracting Officer (CO) is the ONLY person authorized to modify the contract terms or take any action to enter into a change or contractual commitment on behalf of the Government.
>
> b. The Contracting Officer's Representative (COR), whose authority may not be redelegated, is usually limited to monitoring and surveillance of the contractor's performance.

(R4, tab 2 at 2)  The COR was identified as MAJ Mitch Taylor (*id*).

**Contract Performance**

11. Delivery of the gravel and leased equipment initially was scheduled for August 25, 2017 (R4, tab 2 at 2).

12. On August 31, 2017, the government issued Modification No. P00001, changing the delivery date of the contract items to some unspecified future date, and decreasing the amount of gravel specified in CLIN 0001 from 170 cubic meters to 112 and CLIN 0002 from 85 cubic meters to 64 (R4, tab 3 at 2, 8).  The modification also made changes to the delivery and staging of the equipment, as follows:

> 2.1 Delivery:  The contractor shall make multiple deliveries as part of military convoys, based on the contract delivery schedule.
>
> 2.1.1 Delivery 1 (August 28-29 2017) 112 cubic meters of 38mm-50mm diameter gravel (7 dump trucks), 64 cubic meters of 100mm-152mm diameter gravel (4 dump trucks), one (1) Caterpillar CS-563D (or Equal)(1 truck), two (2) Doosan DX 500E (or equal) hand rollers (one truck) shall be delivered to the staging area at Camp Carroll.  Notification will be given by the Government no later than 9:00am the day prior to the required staging.

5

No more that thirteen (13) trucks are authorized for Delivery 1.

2.1.1.1 The Contracting Officer's Representative (COR) or USAG-Daegu representative will coordinate to meet the contractor at Gate #1, Camp Carroll and escort the vehicles to the designated staging area. The vehicles will be parked in the staging area until directed for further movement by the COR.

2.1.1.2 Drivers shall remain overnight at Camp Carroll and will be transported by the U.S. Government to a facility for overnight shelter and accommodations. . . .

2.1.1.6 Delivery to Construction Site: The Government will provide transportation to contracted drivers from their overnight shelter to the vehicle staging point at a time coordinated as directed by the COR. Drivers will be prepared for movement within 1 hour of arrival at vehicle staging point.

2.1.1.7 The Contractor shall be prepared to drive as part of a military convoy to the construction site, offload material, and re-stage for departure.

2.1.1.8 No vehicle will be released from the construction site without direction and approval from the COR.

2.1.1.9 The Contractor shall be prepared to maintain operations and readiness until operations have been completed.

2.1.1.10 Contracted drivers may proceed at their discretion to contractor facilities once released from the construction site.

2.1.1.11 Vehicles transporting rollers required under CLIN 0003 and 0004 shall be capable of offloading equipment by a driver-on/drive-off method. No ramps or material handling equipment will be provided by the government to facilitate loading/unloading.

(R4, tab 3 at 9-10)

6

13. The contractor delivered the contractually-required gravel and equipment on September 7, 2017 (R4, tab 45 at 1; app. supp. R4, tabs 1-3).

**Equipment Retrieval**

14. By email dated October 2, 2017, MAJ Taylor informed KECC:

> We are complete with the use of all rental rollers for the subject contract at Seongju. I have verified that all keys are in the rented equipment and it is ready to be picked up. You can pick it up at your convenience. I will be on the site tomorrow from 0900-1100 if you need to meet with me.

(R4, tab 7 at 2)

15. Appellant stated that on October 3, 2017, it received MAJ Taylor's email dated October 2, 2017, but did not respond until October 10, 2017, when KECC informed MAJ Taylor it would pick up the equipment on October 11, 2017 (R4, tab 8 at 3).

16. On October 11, 2017, KECC attempted to recover the equipment but was prevented from gaining access to the installation by local national Korean protesters (R4, tab 8 at 3-4). By email dated October 12, 2017, KECC informed the contracting officer that it had incurred additional costs in attempting to retrieve equipment on October 11, 2017 (*id.*). KECC stated, in pertinent part:

> The police came after requesting for support to COR but they did not have any information. Called COR again to ask what exactly is happening and found out that there was some mis-understanding between the government and police. Also COR has informed today's pick up work is impossible as there is not enough manpower to cover and escort us.
>
> In addition, COR acknowledged about the conflict and promised the government is responsible for any additional cost such as equipment expense and rental fee of pick up vehicle.

(*Id.* at 3) (Syntax in original)

7

17. By email dated October 13, 2018, the contracting officer informed MAJ Taylor:

> Please see email below. The Contractor will be submitting another claim, which we will take a look at when it comes in. Can you please provide an update of when the pick-up will be scheduled? I want to ensure the equipment is picked up before we modify the award to pay for our claims.
>
> Additionally, although I do not know if what the Contractor is saying true [sic], but please be careful when making any statements along the lines of, "COR acknowledged about the conflict and promised the government is responsible for any additional cost such as equipment expense and rental fee of pick up vehicle."

(*Id.* at 2)

18. By email dated October 17, 2017, the contracting officer asked the COR whether there was a plan in place for the contractor to pick up the equipment (*id.* at 1). By email dated October 20, 2017, the COR responded stating:

> We have submitted the following to the ROKA [Republic of Korea Army]/KNP [Korea National Police]:
>
> The preferred date is 2 Nov 2017. The alternate days are 31 Oct 2017 and 3 Nov 2017.
>
> I anticipate an answer Monday.

(*Id.*)

19. By email to the contracting officer dated November 15, 2017, KECC stated:

> We requert [sic] for additional cost due to sudden cancelation [sic] at 25 Aug. 2017 and delibery [sic] pick-up failure 11 Oct. 2017 as follows.
>
> 1. Sudden cancelation [sic] at 25 Aug. 2017

8

We should pay sudden cancelation [sic] fee 5,100,000KW
(Dump Truck 15ea x 300,000 KW/ea) which was
negotiated and final price.

2.  Delivery pick up failure at 11 Oct. 2017

We should pay additional cargo crane and dump truck
expense 600,000KW (cargo crane 300,000KW + dump
truck 300,000KW) which was negotiated and final price.

※ As the leased vehicles (Catterpiller [sic] CS-562D and
Hand durm [sic] roller) are now [sic] could not carry out of
the base, So it is needed to be modified additional cost at
the end time of leasing.

(R4, tab 11 at 3-4)

20.  By email to KECC dated November 16, 2017, the contract specialist stated:

Understood, we are working with the requiring activity on
finding a solution to removing the equipment from the site.
Once that has been resolved, we will work with you on the
final modification for the actual days of lease.

(*Id.* at 3)

21.  By emails dated November 16, 2017, and November 21, 2017, the
contracting officer asked the COR for updates on removal of the leased equipment (*id.*
at 1-3).  By email dated November 21, 2017, the COR responded to the contracting
officer:

I am waiting on a report from the actions on today's
mission to the site.  Last week, they tried to get the
equipment started, but weren't having any luck.

(*Id.* at 1)

22.  By email dated November 21, 2017, the contracting officer informed the
COR:

Please keep our office updated and in the loop as each
mission affects the contract.  To clarify - are you talking

9

about not being able to start the leased equipment?

(*Id.* at 1)

23. By email to the government dated December 6, 2017, KECC stated:

> This contract is being delayed for almost 2 months and is getting really frustrating for us as we cannot do anything about it. It would be great, If [sic] you could give us a schedule of return date within this week. Otherwise there will be an extra charge for another month of rental. Please consider our situation and advise us.

(App. supp. R4, tab 4 at 1)

24. By email dated December 6, 2019, the government responded:

> First, thank you very much for your cooperation, patience, and understanding. MAJ Taylor's office is working with his higher headquarters and with the ROK Government to set up a schedule so that we can return your equipment to you. Returning your equipment to you is very important to our Team as well as MAJ Taylor's team. Additionally, we will be meeting next Tuesday to figure out how we to [sic] expeditiously resolve the current situation we are in now. We will provide you more information next week after our meeting.

(*Id.*)

25. By email dated December 12, 2017, KECC stated:

> As per contract, it has been almost two months since expiry [sic] date of the contract. We want to know the exact date of return of equipment (2 x 1ton roller, 1 x 5ton roller). For the return of two 1 ton rollers, we require a cargo crane to pick up the rollers. If you would like to continue rental of 5 ton roller, it needs to go through KOREA ENG directly. Also it would be great if there is co-operation by police when returning the equipment as we failed to pass the protesters last time.

(R4, tab 16)

10

26. By email dated December 12, 2017, the COR suggested KECC work directly with MAJ Benny Lee, 35th ADA Brigade Executive Officer, to gain access to the installation and arrange for removal of the equipment (R4, tabs 17, 41 at 8).

27. By email dated December 13, 2017, the COR informed KECC:

> We do NOT wish to rent any equipment. We would like to get you out on the site to pick up the equipment as soon as possible. You will not need a crane to lift the hand rollers into the bongo truck - we can provide a lift capability. Please review my email from this morning and let me know when you can get to the site to pick up the hand rollers and drive the large roller off the site.

(R4, tab 22 at 7-8)

28. During the period from December 14, 2017, to December 21, 2017, the COR and KECC discussed various options to reduce the number of contractor vehicles and employees needed to remove equipment from the site, and discussed KECC possibly removing the equipment on December 21, 2017 (R4, tab 22 at 3-7). That removal date was cancelled because the South Korea Ministry of Defense was "having more problems with the protesters" (R4, tab 22 at 2).

29. By email dated December 28, 2017, the contracting officer asked KECC whether it had retrieved its equipment from the installation (R4, tab 20 at 1). By email that same date, KECC responded:

> We are still waiting for your response to retrieve the equipments [sic] back. I understand there is a conflict with the protesters currently but it has been almost 3 months since CCD. A few months ago, we tried to retrieve the equipments [sic] which advised by COR. But protesters stopped us as there was no support from Korean police. Please inform us if there is a new plan or schedule.

(*Id.*)

30. By email dated January 11, 2018, KECC requested "an extra amount of rental fees for 3 months" (R4, tab 23 at 1).

11

31. By email dated January 16, 2018, MAJ Camille Morgan, contracting officer, informed KECC:

> You must retrieve the following equipment from the site immediately. The method of recovery, should be the same as delivery the (Drive - on/Drive - Off Method). The U.S government is not hindering your company from retrieving the equipment at this time. I need confirmation from you by Friday, 19 January 2018 on how you plan to accomplish this task. You have 1 week from Friday, 19 January 2018, to recover the following equipment.
>
> 1) 1 x Each Vehicle Lease Caterpillar CS-563
>
> 2) 2 x Each Vehicle Lease HAND DRUM ROLLER

(R4, tab 24 at 2)

32. By email dated January 16, 2018, the COR informed KECC:

> I would recommend you call the KNP and file a police report because you cannot get your equipment out. The issue is not with the US Army or the Government but with Korean nationals that are blocking the road.

(R4, tab 24 at 1)

33. By email dated January 16, 2018, KECC responded:

> In order to retrieve the equipment, we would need 2 vehicles (Trailer & 5ton cargo crane) with 3 people including 2 drivers and myself. This plan is exactly the same as before (Delivery plan). However, we need a clear answer for whether you can provide support with Korean police to protect us from protesters. I have actually called Korean national police (Seongju Police Dept. 054-930-0258) to ask for support but they advised U.S government need to contact them and arrange a plan. Please arrange and make a plan with Korean national police and inform us when to pick up the equipment with exact time (Day and time frame).

(*Id.*)

12

34. By email dated January 19, 2018, the contracting officer asked KECC "have you established a new date to retire [sic] your rental equipment form [sic] the site? Yes or no?" (R4, tab 25 at 2)

35. By email dated January 22, 2018, KECC informed the government:

> No, we have not established a new date as we cannot set up a plan with Korean national police.
>
> Please contact Korean national police and inform us when to pick up the equipment with the exact time.

(*Id.* at 1)

36. By email dated March 3, 2018, the government informed appellant:

> We agree that the option to procure the equipment is not the preferred method of ending this procurement; however, the daily cost of this procurement is unsustainable. The COR has stated that the site conditions are not compromised to such an extent that prevent KECC site access to recover the equipment. KECC has made no attempt to since October 11, 2017 to recover this equipment which has been on site at a claimed rate of KRW 1,000,000 per day.
>
> Although movement "on government facilities shall be coordinated through the COR and conducted under escort" per para 2. 1.1.12 of the SOW. Paragraph 2.1.3 (Equipment Recovery) does not require the government of the United States nor the Republic of Korea to provide an escort onto or off of the installation. Pursuant to 52.212-4(a) "the Government may seek an equitable price reduction or adequate consideration for acceptance of nonconforming supplies or services." As the equipment in CLIN 0003 has been non-functional since November, the government, subject to mechanical inspection, may determine that the equipment is non-functional due to a latent defect of the electrical system and request and [sic] equitable adjustment. This is further supported by the CLIN text "THE CONTRACTOR SHALL WARRANTY AND BE RESPONSIBLE FOR ALL NORMAL

13

MAINTENANCE AND SERVICING OF EQUIPMENT
FOR THE DURATION OF THE LEASE."

You must coordinate with the COR (1LT Neky . . .), to
arrange for access to the site at the earliest possible
convenience. The government (US/ROK) will not provide
additional security services as none were stipulated in the
purchase order and assets are not available to provide such
service.

As the Contracting Officer for this requirement; I strongly
urge you to retrieve this equipment immediately.

(R4, tab 28 at 1) (Syntax in original)[*]

37. By email dated March 6, 2018, the government informed appellant:

You missed yesterday's suspense of 5 Mar 2018, to
provide me the Contracting Officer a date and time to pick
your rental equipment from the site. This is my second
attempt to confirm a retrieval date from your company. I
have included our legal offices in this e-mail traffic to
prove that the government has requested that YOU the
contractor, establish a new pick up date of the Rental
Equipment for subject contract.

You must provide a date NLT Weds, 7 Mar 2018 to
retrieve your rental equipment from the site.

(R4, tab 29 at 4)

38. On April 25, 2018, appellant's recovery vehicles joined an Army convoy
entering the site as part of a convoy named "Operation Penny Packer" and KECC
retrieved its equipment from the site (R4, tabs 36, 39 at 3).

---

[*] In February 2018, the government considered purchasing the equipment to minimize
"any further issues with this purchase order" (R4, tab 28 at 4). However,
appellant informed the government that the equipment owners were not
interested in selling the equipment (R4, tab 28 at 2).

14

**Contractor Claim and Final Decision**

39. On May 11, 2018, KECC submitted a breach of contract claim seeking costs incurred (1) on August 25, 2017, when the government cancelled the scheduled delivery, (2) on October 11, 2017, when KECC was unable to retrieve the equipment from the installation, and (3) for alleged extension of the equipment lease from the end of the lease period until the date it was retrieved from the installation on April 25, 2018 (R4, tab 39 at 2-5).

40. On June 22, 2018, the contracting officer issued a final decision sustaining appellant's request for costs incurred on August 25, 2017, and denying appellant's request for costs incurred on October 11, 2017, and costs sought for lease of the equipment from October 7, 2017, until April 25, 2018 (R4, tab 40).

## DECISION

Appellant seeks compensation for extended equipment lease and costs incurred in attempting to retrieve the equipment on October 11, 2017 (compl. ¶¶ 5-6, 35). As the party asserting a claim for breach of contract, appellant has the burden of proof. *Tecom, Inc.*, ASBCA No. 51880, 00-2 BCA ¶ 30,944 at 152,738 (citing *Sphinx Int'l, Inc.*, ASBCA No. 38784, 90-3 BCA ¶ 22,952 at 115,222). As noted above, appellant did not file a brief with the Board in support of its Rule 11 submission on the record. "This, of course, does not relieve the appellant from the necessity of establishing the facts to support its assertions." *C. Leonard Willis*, ASBCA No. 25271, 81-1 BCA ¶ 14,948 at 73,987 n.1.

Appellant's complaint offers insufficient legal support for its proposition that the government was at fault for the contractor's failure to timely remove the leased equipment after expiration of the lease. The contract put the onus on KECC to pick up its equipment at the end of the lease period (finding 7). Appellant admits that the lease period ended on October 6, 2017 (compl. ¶ 25.b). Appellant likewise admits that the government informed appellant it was finished with the equipment and instructed appellant to pick up the equipment from the installation (compl. ¶¶ 11-12, 15; R4, tab 8 at 3).

The record establishes that appellant was unable to retrieve its equipment, not because of government action or inaction, but because local national Korean protesters blocked access to the installation (findings 16, 25, 28-29, 32-33). It is well established that "absent fault or negligence or an unqualified warranty on the part of its representatives, the Government is not liable for damages resulting from the action of third parties." *Oman-Fischbach International (JV) v. Pirie*, 276 F.3d 1380, 1385 (Fed. Cir. 2002) (quoting *Dale Constr. Co. v. United States*, 168 Ct. Cl. 692, 698 (1964)).

15

Appellant cites no contractual provision wherein the government assumed the risk of increased costs resulting from the actions of third parties such as local national Korean protesters. The fact that, at various points in time, protesters inhibited access to the installation did not somehow create a contractual obligation on the government to remove appellant's equipment and deliver it to KECC. Moreover, the record establishes that the government made efforts to assist KECC in removing the equipment from the installation and, ultimately, arranged for KECC to remove the equipment as part of a government convoy (findings 18, 20, 24, 26-28, 38).

Appellant quotes FAR 52.208-4(b), set forth in the contract, which provides "rent shall accrue only for the period that each vehicle is in the possession of the Government" (compl. ¶ 8; R4, tab 1 at 15). This portion of the provision, alone, does not entitle KECC to additional lease payments for the equipment while it remained in the government's possession at the installation. Indeed, FAR 52.208-4(b) also provides that rent "shall continue until the expiration of the contract term or the termination of this contract." (R4, tab 1 at 15) As noted above, appellant admits that the lease period ended on October 6, 2017 (compl. ¶ 25.b). Appellant's failure to remove equipment from the installation as required by the contract does not create a breach of the contract by the government or an obligation for the government to pay appellant additional amounts for extended lease of the equipment. *See generally, Dynamic Research Corp.*, ASBCA No. 57830, 13-1 BCA ¶ 35,273 at 173,149 ("A contractor cannot create an obligation on the part of the Government to reimburse it for a cost overrun by voluntarily continuing performance and incurring costs after the cost limit has been reached") (quoting *North American Rockwell Corp.*, ASBCA No. 14329, 72-1 BCA ¶ 9207 at 42,722 (construing limitation of funds clause)).

Appellant correctly notes that the contract provided for use of a convoy to bring equipment onto the post (compl. ¶ 13.a). The contract, however, does not provide for use of a convoy to remove the equipment (findings 5, 12). As explained in the declaration of MAJ Morgan, "South Korean contractors and civilians could freely come and go through the gate without any escort or assistance, which is in contrast to U.S. Personnel, who had to use rotary wing transport to enter and exit the installation" (R4, tab 45 at 2). The fact that the government ultimately arranged for appellant to remove the equipment from the site as part of a convoy did not somehow obligate the government to have done so, or make the government liable for increased costs because it did not provide a convoy at any time prior to April 2018.

In essence, appellant alleges a constructive change, although it does not invoke that terminology. As we explained recently, "[a] constructive change occurs when a contractor performs work beyond the contract requirements, without a formal order under the Changes clause, due either to an express or implied informal order from an authorized government official or to government fault." *Optimization Consulting, Inc.*, ASBCA No. 58752, 19-1 BCA ¶ 37,426 at 181,905 (quoting *Parwan Group Co.*,

16

ASBCA No. 60657, 18-1 BCA ¶ 37,082 at 180,498). Appellant's inability to remove its equipment from the site was not the fault of the United States Government, but was caused by the local national Korean protesters (findings 16, 25, 28-29, 32-33).

In addition, the contract's Commercial Items Changes clause, FAR 52.212-4(c) required that changes in the terms and conditions of the contract be made by written agreement of the parties (finding 8). Appellant cites no formal order, or express or implied formal order, from an authorized government official agreeing either to extend lease payments or reimbursement of costs incurred on October 11, 2017. Moreover, as we noted recently, the constructive change doctrine does not apply to a Commercial Items contract because FAR 52.212-4(c) includes "no provision for unilateral action by the contracting officer." *Tkacz Engineering, LCC*, ASBCA No. 60358, 18-1 BCA ¶ 36,940 at 179,962.

As to appellant's claim for alleged costs incurred on October 11, 2017, the record reflects that appellant was prevented from accessing the installation by local national Korean protesters, not the United States Government (finding 16). Appellant suggests, however, that the COR agreed the government would reimburse appellant for the costs it incurred that day (compl. ¶ 17.a). Although the record contains copies of emails indicating the government discussed appellant's demand for payment of its costs (*see* findings 16-17, 19-20), the record does not support a finding that the COR, or anyone with actual authority to bind the government, made such an agreement. Indeed, the contracting officer's representative – who allegedly offered to reimburse appellant for its costs – lacked authority to make such an agreement or commit the government to the payment of funds (finding 9). As such, even assuming the constructive change doctrine applied to this appeal, appellant has not established it is entitled to reimbursement by the government for costs incurred on October 11, 2017.

17

## CONCLUSION

For the reasons stated above, the appeal is denied.

Dated: February 24, 2020

DAVID B. STINSON
Administrative Judge
Armed Services Board
of Contract Appeals

I concur

RICHARD SHACKLEFORD
Administrative Judge
Acting Chairman
Armed Services Board
of Contract Appeals

I concur

OWEN C. WILSON
Administrative Judge
Vice Chairman
Armed Services Board
of Contract Appeals

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA No. 61724, Appeal of Korea Engineering Consultants Corporation, rendered in conformance with the Board's Charter.

Dated:

PAULLA K. GATES-LEWIS
Recorder, Armed Services
Board of Contract Appeals